IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF TEXAS
FORT WORTH DIVISION



| | | |
|---|---|---|
| SIYUAN LIU, | § | |
| | § | |
| Plaintiff, | § | |
| | § | |
| VS. | § | NO. 4:09-CV-415-A |
| | § | |
| LEE F. JACKSON, As Chancellor | § | |
| of the University of North | § | |
| Texas System, ET AL., | § | |
| | § | |
| Defendants. | § | |

<u>MEMORANDUM OPINION</u>
<u>and</u>
<u>ORDER</u>

Came on for consideration the motion of defendants, Lee F.
Jackson ("Jackson") as Chancellor of the University of North
Texas System, Dr. Scott Ransom ("Ransom") as President of the
University of North Texas Health Science Center ("Health Science
Center"), and Dr. Thomas Moorman ("Moorman"), to dismiss the
claims brought against them by plaintiff, Siyuan Liu, pursuant to
Rule 12(b)(1) and Rule 12(b)(6)[1] of the Federal Rules of Civil
Procedure.[2]  As Jackson and Ransom are sued only in their

---

[1]The introductory paragraph of the motion to dismiss states it is brought pursuant to Rule
12(b)(1) and Rule 12(b)(2) of the Federal Rules of Civil Procedure. As the body of the motion and the
accompanying brief discuss dismissal under Rule 12(b)(1) and Rule 12(b)(6), and as nothing in the
motion or brief discusses personal jurisdiction pursuant to Rule 12(b)(2), the court will consider the
reference to Rule 12(b)(2) a typographical error.

[2]Dr. Roberto Cardarelli was originally named as a defendant; however, plaintiff filed a motion to
dismiss Dr. Cardarelli, which the court granted on October 20, 2009.

official capacities, all claims against them are considered to be
claims against the University of North Texas and the Health
Science Center.  <u>Will v. Michigan Dept. of State Police</u>, 491 U.S.
58, 71 (1989).  Plaintiff does not specify the capacity in which
he sues Moorman.  To the extent Moorman is sued in his official
capacity, all claims against him are also considered to be claims
against the University of North Texas and the Health Science
Center (Jackson, Ransom, and Moorman in his official capacity
hereinafter collectively referred to as the "University
Defendants").  <u>Id.</u>

I.

## Plaintiff's Claims

Plaintiff, a citizen of China, has been a graduate student
at the Health Science Center since 2008.  In May 2009 plaintiff
enrolled in a "practical experience" class, during the course of
which his work required him to use a shared computer to conduct
his research.  In an effort to assist in his research plaintiff
on May 18, 2009, installed a "download management software"
program known as Thunder.  Second Am. Compl. at 4.  According to
the allegations in the complaint, Thunder is "widely used for
file management software by Chinese-speaking computer users," and
starts automatically, without user activation, when a computer is

2

turned on.  Id. at ¶ 6.  Plaintiff alleges that on June 9, an
individual from the university's information technology
department informed him that file-sharing software was running on
the computer where plaintiff was working.  On or about June 10,
2009, university officials allegedly began "building a case" to
have plaintiff expelled.  Id. at 5.  On June 12, 2009, plaintiff
contends Moorman wrote to the Dean of the School of Public Health
to inform him that the computer plaintiff shared contained
"illegal software and illegally downloaded movies and concerts,"
and alleged that plaintiff had violated copyright laws.  Id.

On June 15, 2009, plaintiff was summoned to a hearing to be
held June 18, 2009, on the matter.  Despite plaintiff's attempts
to learn about the charges against him, he was not provided that
information.  At the June 18 hearing a university official, Dr.
Van Duser, informed plaintiff that he had violated school policy,
and the school had discovered copyrighted music and videos
downloaded to plaintiff's computer.  On June 22, 2009, plaintiff
was summoned to Moorman's office, where he was handed a prepared
letter informing him that the decision after the hearing was
"academic withdrawal."  Id. at 9.  Moorman then allegedly called
in a campus police officer to escort plaintiff from the premises.

Plaintiff filed a notice of appeal, requesting a hearing. On July 14, 2009, Moorman sent a letter to plaintiff's attorney, responding to the notice of appeal with "new charges, new evidence, new witnesses," and a suggestion that other unnamed witnesses might be added later. Id. at 11.

Plaintiff filed the instant action on July 15, 2009, and also filed a motion for temporary restraining order, which the court denied. Plaintiff subsequently filed a first amended complaint and a second amended complaint.[3] Plaintiff brings claims pursuant to 42 U.S.C. § 1983 for violation of his rights to due process, equal protection, and substantive due process, as well as state law claims for defamation and false arrest. The second amended complaint added a claim entitled "contract" against the University Defendants and a claim of fraud as to all defendants.

---

[3]Plaintiff filed the second amended complaint after defendants filed their motion to dismiss. Upon review of the second amended complaint, the court finds that it added a claim entitled "contract" against the University Defendants and a cause of action for fraud against all defendants. The second amended complaint also added a discussion of Eleventh Amendment immunity, qualified and official privilege, exhaustion, and ripeness, none of which can be considered causes of action or claims. As the disposition of the motion turns on the Eleventh Amendment immunity of the University Defendants, and as the motion to dismiss did not address any claims against Moorman in his individual capacity, the court will consider the motion to dismiss as applied to the second amended complaint.

II.

## Grounds of the Motion

Defendants contend that plaintiff's claims should be dismissed for lack of subject matter jurisdiction pursuant to Rule 12(b)(1) of the Federal Rules of Civil Procedure because they are unripe and because claims against the University Defendants are barred by Eleventh Amendment immunity. Defendants further contend that plaintiff's claims against the University Defendants under 42 U.S.C. § 1983 should be dismissed for failure to state a claim upon which relief may be granted, as state officials in their official capacities are not "persons" within the meaning of § 1983. Because the court concludes that all of plaintiff's claims against the University Defendants are barred by the doctrine of sovereign immunity, it need only address the ripeness doctrine as to claims against Moorman in his individual capacity.

III.

## Applicable Legal Principles

Under Rule 12(b)(1) of the Federal Rules of Civil Procedure, a case is properly dismissed when the court "lacks the statutory or constitutional power to adjudicate the case." Home Builders

5

Ass'n of Miss., Inc. v. City of Madison, Miss., 143 F.3d 1006, 1010 (5th Cir. 1998) (citations omitted). When confronted with a challenge to its jurisdiction, the court has broad power to weigh the evidence and satisfy itself that it has jurisdiction to hear the case. Williamson v. Tucker, 645 F.2d 404, 412-13 (5th Cir. 1981). When a defendant challenges the plaintiff's jurisdictional allegations, "the plaintiff constantly bears the burden of proof that jurisdiction does in fact exist." Ramming v. United States, 281 F.3d 158, 161 (5th Cir. 2001); Menchaca v. Chrysler Credit Corp., 613 F.2d 507, 511 (5th Cir. 1980). A claim of Eleventh Amendment immunity and an assertion that claims are unripe both implicate the court's subject matter jurisdiction. See Sample v. Morrison, 406 F.3d 310, 312 (5th Cir. 2005) (ripeness is a component of subject matter jurisdiction); Warnock v. Pecos County, Tex., 88 F.3d 341, 343 (5th Cir. 1996) (claims barred by sovereign immunity must be dismissed under Rule 12(b)(1)). When considering a motion to dismiss for lack of subject matter jurisdiction, the court may consider evidence beyond the pleadings. Moran v. Kingdom of Saudi Arabia, 27 F.3d 169, 172 (5th Cir. 1994).

6

IV.

## Analysis

A.   Eleven Amendment Immunity

The Eleventh Amendment of the United States Constitution "is

a jurisdictional bar to federal court suit by private citizens

against a state . . . regardless of the type of relief sought."

Mohler v. State of Miss., 782 F.2d 1291, 1293 (5th Cir. 1986)

(internal citations omitted).  It applies both to suits brought

by a state's own citizens, as well as those brought by citizens

of other states.  Puerto Rico Aqueduct & Sewer Auth. v. Metcalf &

Eddy, Inc., 506 U.S. 139, 144 (1993).  Eleventh Amendment

immunity is not absolute: a state may consent to suit or Congress

may, in certain instances, abrogate the states' Eleventh

Amendment immunity.  Port Auth. Trans-Hudson Corp. v. Feeney, 495

U.S. 299, 304 (1990) (internal citations omitted).[4]  However,

---

[4]An exception to Eleventh Amendment immunity, under Ex Parte Young, 209 U.S. 123 (1908), applies if a suit alleging violations of federal law is "brought against individual persons in their official capacities as agents of the state, and the relief sought [is] declaratory or injunctive in nature and prospective in effect." Aguilar v. Texas Dep't of Crim. Justice, 160 F.3d 1052, 1054 (5th Cir. 1998). The Young exception applies only where there is an "allegation of an ongoing violation of federal law where the requested relief is prospective." Idaho v. Coeur d'Alene Tribe of Idaho, 521 U.S. 261, 281 (1997).  Here, plaintiff specifically requests injunctive relief as to his substantive due process claim to protect him "should he resume his relationship with the University," Second Am. Compl. at 18, ¶ 39, his claim of false arrest, and in the prayer for relief to enjoin violations of his rights and to undo the damage incurred by defendants' actions.  All of plaintiff's allegations concern past actions of the University of North Texas and Health Science Center.  As plaintiff's claims do not allege an ongoing violation of federal law, the Young exception does not apply.

"absent waiver, neither a State nor agencies acting under its control may be subject to suit in federal court." Puerto Rico Aqueduct, 506 U.S. at 144 (internal quotations omitted).

Plaintiff apparently does not disagree with the doctrine of Eleventh Amendment immunity generally. However, in his response, plaintiff disputes whether either the University of North Texas or the Health Science Center are an "arm of the State." Pl.'s Opp'n to Mot. to Dismiss at 5. Plaintiff argues that the University of North Texas System ("UNT System") (encompassing the University of North Texas and Health Science Center) "are more analogous to a school district or local government entity" and are thus not entitled to Eleventh Amendment immunity, and that section 2260.001 of the Texas Government Code requires a "unit of state government" to be in "any branch of state government" and "created by Texas constitution or statute." Id. at 6-7.

Plaintiff offers no support for his contention that the UNT System is more analogous to a school district or local government entity, nor does he attempt to distinguish the many cases holding that other similar institutions are state agencies. See, e.g., Chavez v. Arte Publico Press, 204 F.3d 601, 603 (5th Cir. 2000) (University of Houston is a state entity that enjoys Eleventh Amendment immunity); Wallace v. Tex. Tech Univ., 80 F.3d 1042,

8

1047 n.3 (5th Cir. 1996) ("Texas Tech, as a state institution,
clearly enjoys Eleventh Amendment immunity."); My-Tech, Inc. v.
Univ. of North Tex. Health Sci. Ctr., 166 S.W.3d 880, 882-83
(Tex. App.--Dallas 2005, pet. denied) (Health Science Center "is
a state institution and thus benefits from the doctrine of
sovereign immunity.").  Further, in the portion of the Texas
Government Code upon which plaintiff relies, the very portion
cited by plaintiff includes "university system" in the definition
of "unit of state government."  Plaintiff does not attempt to
explain how a "university system" can be included in the
definition of "unit of state government" yet not truly be such an
entity of the state.

Finally, plaintiff contends that Chapter 105 of the Texas
Education Code, titled "University of North Texas System," only
"confirms the existence of the UNT System" rather than actually
establishing it as a "unit of state government."  Pl.'s Opp'n at
6.  In determining whether the UNT System is a state entity, the
court considers such factors as "the status of the university
under state law, the degree of state control over the
university," and whether a money judgment against the university
would interfere with the "fiscal autonomy of the state."  Lewis
v. Midwestern State Univ., 837 F.2d 197, 198 (5th Cir. 1988)

(considering the factors and concluding that Midwestern State University is an agency of the state and subject to Eleventh Amendment sovereign immunity).  Factors relevant here include: "the university is classified as a 'general academic teaching institution' under Texas law, and is therefore an agency of the state."  Id., citing Tex. Educ. Code Ann. § 61.003(3).

Whether or not, as plaintiff claims, the UNT System began as a private institution, it is now subject to Chapter 105 of the Texas Education Code, a statute that "authorizes the operation of the universit[ies] and provide[s] for [their] governance."  Id. Section 105.051 vests "organization, control, and management" of the UNT System in a board of regents "appointed by the governor and confirmed by the senate," another factor weighing in favor of concluding that the UNT System is an entity of the state.  Id.

Although the court could continue considering how various provisions of the Texas Education Code support the conclusion that the University of North Texas and the Health Science Center are state agencies, the court is more than satisfied that such a conclusion is warranted by the preceding discussion.  Thus, claims against the University Defendants in their official capacities are claims against the State, and those claims are barred unless the State has waived its immunity.  Will, 491 U.S.

at 66.  Plaintiff has alleged nothing nor directed the court to authority showing such a waiver.

Accordingly, all of plaintiff's § 1983 claims against the University Defendants are barred by Eleventh Amendment immunity. To the extent any of plaintiff's state law claims for defamation, false arrest, contract, and fraud are asserted against the University Defendants, Eleventh Amendment immunity bars those claims as well. <u>Pennhurst State Sch. & Hosp. v. Halderman</u>, 465 U.S. 89, 121 (1984); <u>Hays County Guardian v. Supple</u>, 969 F.2d 111, 125 (5th Cir. 1992); <u>Bisong v. Univ. of Houston</u>, 2006 WL 2414410 (S.D. Tex. Aug. 18, 2006) (university student's breach of contract claim against state university barred by Eleventh Amendment immunity); <u>Texas A&M Univ. Sys. v. Koseoglu</u>, 233 S.W.3d 835 (Tex. 2007) (same).

B.   <u>Ripeness</u>

Defendants contend that plaintiff's claims should be dismissed because they are unripe, as plaintiff has available additional levels of appeal of the disciplinary action taken, and school officials could still take action that would remedy plaintiff's alleged injury.  Defendants base their assertion on the appeals procedures set forth in the Policies of the University of North Texas Health Science Center, Student Code of

Conduct and Discipline, included in their appendix in support of the motion to dismiss. The section governing "Appeals of Decisions of the Committee on Student Conduct" allows a student (or other specified party) within five working days after a decision by the Committee on Student Conduct to give written notice of an appeal of that decision. Defs.' App. at 26. The section entitled "Procedural Appeal of the Disciplinary Procedures" allows a student to request a procedural review of the disciplinary process within five working days after a disciplinary decision. Id. Exhibit 3 of defendants' appendix is a letter addressed to plaintiff, dated August 26, 2009, informing him of the decision of the Committee on Student Conduct and Discipline.

According to defendants, this letter informs plaintiff of the decision from which he could appeal using either of the above-described appeal procedures. According to defendants' policy, plaintiff was required to appeal the August 26, 2009, letter within five working days, or by September 2, 2009. As no record of plaintiff's appeal is mentioned in defendants' motion to dismiss, filed September 9, 2009, the court can only conclude that plaintiff elected not to appeal the August 26, 2009, decision of the Committee on Student Conduct and Discipline.

12

Plaintiff appears to confirm this in his response to the motion to dismiss, where he states that "[t]he administrative review process has now ended" due to plaintiff's fear of retaliation. Pl.'s Opp'n to Defs.' Mot. to Dismiss at 4, ¶ 8.  It thus appears to the court that for purposes of defendants' motion to dismiss, plaintiff's claims are as ripe as they will ever be.

C.   Claims and Parties Remaining in the Action

As a result of the court's rulings herein, all claims and causes of action asserted against the University Defendants are dismissed.  All that remains are the following claims against Moorman in his individual capacity:  claims under § 1983 for violations of due process, equal protection, and substantive due process, and state law claims for defamation, false arrest, and fraud.[5]  Plaintiff's cause of action for "contract," to the extent it asserts any claim, is alleged only against the University Defendants.

---

[5]The court offers no opinion as to the merit of any of the remaining claims against Moorman in his individual capacity.

13

V.

Order

Therefore,

For the reasons discussed herein,

The court ORDERS that the motion to dismiss be, and is hereby, granted as to Jackson, Ransom, and Moorman in his official capacity.

The court further ORDERS that the style of this action be modified by the elimination of "Lee F. Jackson as Chancellor of University of North Texas System, Dr. Scott Ransom as President of the University of North Texas Health Science Center," from the style so that from this point forward the style of this action shall be "Siyuan Liu, Plaintiff, v. Dr. Thomas Moorman, Defendant."

SIGNED January 29, 2010.

_____
JOHN McBRYDE
United States District Judge

14